**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JANEIRO ROBERTS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-3304 |
| | § | |
| FEDERAL HOME LOAN CORPORATION | § | |
| (FREDDIE MAC), *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The plaintiffs, Janeiro and Doris Roberts, sue the Federal Home Loan Corporation ("Freddie Mac") and Wells Fargo Bank, N.A., challenging the foreclosure of the plaintiffs' home. The plaintiffs contend that the defendants lacked authority to foreclose and that the foreclosure breached an oral promise to cancel the foreclosure sale. The plaintiffs assert claims for negligent misrepresentation, for promissory estoppel, to quiet title, and for violations of the Texas Business and Commerce Code. They seek damages, attorney's fees, and an order to quiet title, reverse the foreclosure sale, and reinstate the mortgage loan. (Docket Entry No. 11). The defendants have moved for summary judgment on all claims. (Docket Entry No. 16).

Based on the pleadings; the motion, response, and reply; the evidence; and the relevant law, the defendants' motion for summary judgment is granted. The reasons are explained below.

**I.    Background**

On March 24, 2008, the plaintiffs executed a $417,000 mortgage loan from Franklin American Mortgage Company to purchase a home, secured by a Note and Deed of Trust. (Docket Entry No. 16, Exs. A-1, A-2). Mortgage Electronic Registration Systems (MERS) was named the

beneficiary and nominee for the mortgagee. (*Id.*, Ex. A-2). On July 8, 2008, Wells Fargo purchased the Note. (*Id.*, Ex. A, ¶ 7). On July 14, 2008, it sold the Note to the Federal Home Loan Mortgage Corporation. (*Id.*). On November 15, 2010, the Deed of Trust was assigned to Wells Fargo. (*Id.*, Ex. A-3).

In February 2010, the plaintiffs fell behind on their mortgage payments. They requested a loan modification, but their request was denied when they cured their default. (Docket Entry No. 18-1, ¶ 2). The plaintiffs defaulted again by failing to make the April 2010 payment. (Docket Entry No. 16, Ex. A, ¶ 10). In a letter dated August 22, 2010, Wells Fargo notified the plaintiffs that they were in default for failing to make their payments. (*Id.*, Ex. A-4). The letter stated that they could cure the default by paying $22,752.70 by September 21, 2010. The plaintiffs did not make that payment. (Docket Entry No. 16, Ex. A, ¶ 9). Around November 15, 2010, Wells Fargo executed an Appointment of Substitute Trustee and recorded the appointment in the Ford Bend County, Texas public records. (*Id.*, Exs. A-5, B-1).

On November 29, 2010, the plaintiffs again requested a loan modification from Wells Fargo. (Docket Entry No. 16, Ex. A, ¶ 3). Wells Fargo scheduled a foreclosure scale for December 07, 2011. (*Id.*, ¶ 5). Wells Fargo twice delayed the scheduled foreclosure sale to provide additional time to review the plaintiffs' loan-modification request. (*Id.*, ¶ 5). In a letter dated January 5, 2011, Wells Fargo's foreclosure counsel, Barrett Daffin Frappier Turner & Engel, LLP, notified the plaintiffs that the Note had been accelerated and that a foreclosure sale was scheduled for February 1, 2011. (*Id.*, Ex. B-2). Around this time, the plaintiffs consulted with attorneys about the possibility of filing bankruptcy. (Docket Entry No. 16, Ex. A, ¶ 3).

Around January 15, 2011, the plaintiffs requested that Wells Fargo again delay the

2

foreclosure sale so that it would have additional time to consider the plaintiffs' loan-modification request. On January 26, 2011, a Wells Fargo loan-modification specialist assigned to the plaintiffs' account told them that the February 1 foreclosure sale had been postponed. (Docket Entry No. 16, Ex. A, ¶ 3). Based on Wells Fargo's statement that the foreclosure sale had been postponed, the plaintiffs decided not to file bankruptcy.

On February 1, 2011, Wells Fargo told the plaintiffs that their loan-modification request had been denied. The home was sold at foreclosure as scheduled for that date. (Docket Entry No. 16, Ex. B-3; Docket Entry No. 18-1, ¶ 9). In response, Mrs. Roberts sent Wells Fargo a letter stating that she had been informed that the sale had been postponed and asking Wells Fargo to rescind the foreclosure. (Docket Entry No. 18, Ex. A-2). On February 7, 2011, the plaintiffs received a letter dated January 31, 2011 confirming that their loan-modification request had been denied on the basis that they did not have enough income to afford the lower monthly loan payments and qualify for the modification. (Docket Entry Nos. 18-1, ¶ 10; 18, Ex. A-3).

The plaintiffs hired an attorney, and Wells Fargo "agreed to a post-foreclosure modification review." (*Id.*, ¶ 11). Around August 10, 2011, however, Wells Fargo served the plaintiffs with an eviction suit. Neither the plaintiffs nor their attorney received notice of the result of the modification review. (*Id.*, ¶ 12). The plaintiffs sued Wells Fargo in state court and obtained a temporary restraining order. (Docket Entry Nos. 1; 18-1, ¶ 14). On September 8, 2011, the defendants removed to this court. (Docket Entry No. 1).

In August 2012, the plaintiffs were served with a second eviction notice. (Docket Entry No. 18-1, ¶ 16). In a separate case, a state court granted Wells Fargo and Fannie Mae possession of the home. The plaintiffs have appealed the eviction judgment in that case. (*Id.*, ¶ 10).

In their first amended complaint in this federal case, the plaintiffs assert state-law claims for negligent misrepresentation, for promissory estoppel, to quiet title, and for violations of the Texas Business and Commerce Code, seeking damages, attorney's fees, and an injunction to quiet title, reverse the foreclosure sale, and reinstate the loan.  (Docket Entry No. 11).  The defendants have moved for summary judgment.  (Docket Entry No. 16).

## II.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam)).

4

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive

a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant

must identify specific evidence in the record and articulate how that evidence supports that party's

claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied

by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated

assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d

at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the

light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving

party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289

(1968)).

III.     **Analysis**

    A.     **The Promissory Estoppel Claims**

The plaintiffs allege that Wells Fargo, through its loan servicing specialist, promised that the

foreclosure sale scheduled for February 1, 2011 had been suspended. (Docket Entry No. 11, ¶ 26).

They further allege that they detrimentally relied on that promise by "postponing any plans for

alternative action such as Chapter 13 bankruptcy." (*Id.*, ¶ 27).

The elements of promissory estoppel in Texas are: (1) a promise; (2) foreseeability of

reliance thereon by the promisor; and (3) substantial reliance by the promisee to her detriment.

*English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). Promissory estoppel is a cause of action

available to a promisee who has acted to her detriment in reasonable reliance on an otherwise

unenforceable promise. *Bell v. Bank of Am. Home Loan Servicing LP*, 2012 WL 568755, at *5 (S.D. Tex. Feb. 21, 2012). Promissory estoppel is an alternative to a breach of contract claim. *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). "Promissory estoppel does not create a contract where none existed before, but only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them." *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 139 (Tex. App.—Corpus Christi 2001, no pet.).

The defendants argue that the promissory estoppel claims are barred by the statute of frauds. Under § 26.02 of the Texas Business and Commerce Code, the statute of frauds applies to loan agreements valued at more than $50,000. TEX. BUS. & COM. CODE § 26.02; *see also Deuley v. Chase Home Finance LLC*, 2006 WL 1155230, at *2 (S.D. Tex. Apr. 25, 2006) ("The oral modification in this case relates to the original loan agreement, which must be in writing because it exceeds $50,000. Thus, the modification is also required to be in writing to comply with the statute of frauds." (citing § 26.02(a)(2))). The parties agree that the plaintiffs borrowed $417,000 to purchase their home. (Docket Entry Nos. 11, ¶ 6; 16, Ex. A, ¶ 4). When the statute of frauds applies, promissory estoppel is available only if the alleged oral promise is a promise to sign an existing document that satisfies the statute of frauds. *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 553 (Tex. App.—Dallas 2009, pet. dism'd); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549 (5th Cir. 2010) ("Under Texas law, promissory estoppel requires that the agreement that is the subject of the promise must comply with the statute of frauds. That is, the agreement must be in writing at the time of the oral promise to sign it." (internal quotation omitted)).

The plaintiffs respond that the statute of frauds does not apply here because § 26.02 of the Texas Business and Commerce Code is "clearly limited to oral agreements and discussions that

6

occur before or contemporaneously with the execution of [an] agreement." (Docket Entry. No. 18, ¶ 20 (brackets in original)). The plaintiffs also argue that they "have alleged a statement or promise by Wells Fargo that is independent but not inconsistent with the original agreement signed by the parties and not a modification or alteration of the terms or rights of the parties." (*Id.*, ¶ 21).

The statute of frauds applies whether Wells Fargo's promise to delay the February 1 foreclosure sale was a new agreement that was independent of the original mortgage contract or a subsequent oral modification to that contract. For statute-of-frauds purposes, Texas law defines "loan agreement" broadly to include "one or more promises . . . pursuant to which a financial institution . . . agrees to . . . delay repayment of money, goods, or another things of value or to otherwise extend credit or make a financial accommodation." TEX. BUS. & COM. CODE § 26.02(a)(2). Wells Fargo's promise to delay the foreclosure sale was subject to the statute of frauds because it both delayed repayment of money and goods and was a financial accommodation to the plaintiffs. *See Krudop v. Bridge City State Bank*, 2006 WL 3627078, at \*4 (Tex. App.—Beaumont Dec. 14, 2006, pet. denied) ("[A]ny agreement to forego or delay foreclosure . . . would fall under the provisions of section 26.02(b), and be included under the definition of a loan agreement in section 26.02(a)(2)."); *see also Montalvo v. Bank of Am. Corp.*, 864 F. Supp. 2d 567, 582 (W.D. Tex. 2012) ("[T]o the extent plaintiffs contend that a new oral contract was created (as opposed to a modification of the original loan), such an oral contract would also be governed by the statute of frauds for loan agreements."); *Deuley v. Chase Home Fin. LLC*, 2006 WL 1155230, \*3 (S.D. Tex. Apr. 26, 2006) (holding that a promise to delay foreclosure is a loan agreement).

The plaintiffs correctly point out that § 26.02(d) omits language suggesting that the statute of frauds would bar subsequent — as opposed to prior or contemporaneous — oral modifications

to contracts covered by the statute.  Section 26.02(d) states that a loan agreement subject to the statute of frauds "may not be varied by any oral agreements or discussions that occur *before or contemporaneously with* the execution of the agreement."  Tex. Bus. & Com. Code § 26.02(d) (emphasis added).  But § 26.02(e) requires that financial institutions seeking to take advantage of the statute of fraud's protections provide debtors with a notice stating:  "This written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of *prior, contemporaneous, or subsequent* oral agreements of the parties." § 26.02(e) (emphasis added).  The contradictory language in these statutory provisions appears to be the result of a scrivener's error.  *See Ellen v. F.H. Partners, LLC*, 2010 WL 4909973, *5 (Tex. App.—Austin Dec. 1, 2010, no pet.) (declining to resolve the "apparent internal statutory conflict" between § 26.02(d) and § 26.02(e) but applying common-law statute-of-frauds principles to hold that subsequent oral modifications to a covered contract are unenforceable).  Because the statute of frauds applies regardless of whether Wells Fargo's promise to delay the foreclosure sale was a new loan agreement or a modification to an existing agreement, the court need not resolve this conflict.

The plaintiffs "ask the Court to consider the various court decisions that have held that . . . subsequent verbal agreements and conduct may alter the terms of a prior written agreement." (Docket Entry. No. 18, ¶ 22).  They do not, however, provide citations to the "various court decisions" that they believe support their argument.  If correct, the  argument that prior agreements can be subsequently modified might support a breach-of-contract claim.  But the plaintiffs do not allege that Wells Fargo breached a contract.  The argument also fails because, as explained above, any subsequent verbal agreements to delay the February 1 foreclosure sale would have been subject, as a "loan agreement," to the statute-of-frauds writing and signature requirements.

8

The plaintiffs' references to exceptions to the parol evidence rule also fail to respond to the defendants' arguments. The plaintiffs argue that, "[t]he rule that extrinsic evidence is not admissible to vary the terms of a written instrument does not forbid a resort to parol evidence showing an intention consistent with the writing." (Docket Entry No. 18, ¶ 17). They also argue that "[c]ourts have also found that the parol evidence rule does not apply to agreements made subsequent to a written agreement." (*Id.*, ¶ 18). But the defendants have not moved for summary judgment based on the parol evidence rule.

In sum, the promissory estoppel claims fail as a matter of law. Summary judgment is granted dismissing those claims.

### B.    The Negligent Misrepresentation Claims

The plaintiffs allege that Wells Fargo misrepresented that the foreclosure sale scheduled for February 1, 2011 had been suspended because the loan-modification application was still under consideration. However, on February 1, Wells Fargo concluded the loan-modification process, denied the application, and sold the property. The plaintiffs assert that they relied on Wells Fargo's representations by not filing for bankruptcy before the foreclosure sale.[1]

The defendants argue that the negligent misrepresentation claims are barred by the economic

---

[1] According to the Making Home Affordable Program Handbook, which applies to federal HAMP loan modification, "[b]orrowers in active Chapter 7 or Chapter 13 bankruptcy cases are eligible for HAMP at the servicer's discretion in accordance with investor guidelines . . . ." Making Home Affordable Program Handbook, Version 4.1, available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_41.pdf. A bankruptcy filing would have been a factor, though not disqualifying, in the defendant's consideration of the plaintiffs' loan modification application.

loss rule.[2]  Under Texas law, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007).  A contractual relationship between two parties "may create duties under both contract and tort law," and "[t]he acts of a party may breach duties in tort or contract alone or simultaneously in both." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  Tort obligations "are in general obligations that are imposed by law — apart from and independent of promises made and therefore apart from the manifested intention of the parties — to avoid injury to others." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (internal quotation marks omitted).  "If the defendant's conduct — such as negligently burning down a house — would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort.  Conversely, if the defendant's conduct — such as failing to publish an advertisement — would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Id.*  "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes*, 711 S.W.2d at 618.

In this case, the injuries that the plaintiffs allege, such as loss of title, are barred by the

---

[2]  The defendants also argue that, even if Wells Fargo's representative promised to postpone the foreclosure, this statement was a promise for future performance. (Docket Entry No. 16, ¶ 17–18). The defendants point out that promises for future performance, unlike statements of existing facts, cannot be the basis for negligent misrepresentation claims. *See, e.g.*, *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 760–61 (Tex. App.–Fort Worth 2012, pet. filed) ("A promise to do or to refrain from doing an act in the future is not actionable because it does not concern an existing fact."). The plaintiffs, however, allege that the Wells Fargo representative informed them that the foreclosure "had been stopped."  This is not a promise of future performance; it pertains to an existing fact.

economic loss rule because they are the subject of the mortgage contract with Wells Fargo.  The parties' rights and duties relating to loan repayment and foreclosure flow from the mortgage Note and Deed of Trust.  Wells Fargo's oral statement that it had cancelled the scheduled foreclosure sale because it was at that time continuing to evaluate the plaintiffs' loan-modification application was at most a promise "to forgo a pre-existing contractual right to foreclose under the loan agreement." *Ellis v. PNC Bank*, N.A., 2012 WL 2958266, *4 (S.D. Tex. 2012).  Furthermore, the plaintiffs' loss of title to their home is an economic damage that arises solely and directly from the alleged breach of this contractual relationship. *Sanghera v. Wells Fargo Bank*, N.A.  2012 WL 555155, *6 (N.D. Tex. 2012).  In light of the source of the parties' obligations and the nature of the plaintiffs' injuries, this tort cause of action is barred by the economic loss rule.

The plaintiffs' response to the defendants' economic loss rule argument is that their relationship to their home is unique and its loss to foreclosure "cannot be measured in strictly pecuniary terms."  (Docket Entry No. 18, ¶ 3).  They contend that because money damages would be inadequate compensation for their injury, rescission of the foreclosure sale is the appropriate remedy.

Courts applying Texas law, however, have concluded that "rescission is not an available remedy" for negligent misrepresentation claims. *Arisma Group, LLC v. Trout & Zimmer, Inc*., 2009 WL 3075203, at *4 (N.D. Tex. Sept. 25, 2009).  The Texas Supreme Court has held that, unlike fraudulent inducement claims, the "benefit of the bargain measure of damages is not available for a claim of negligent misrepresentation." *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist*., 973 S.W.2d 662, 663 (Tex. 1998).  "The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for pecuniary loss to him . . . ." *Id.* (citing RESTATEMENT (SECOND) OF

11

TORTS § 552B (1977)); *cf. Boyles v. Kerr*, 855 S.W.2d 593, 598 (Tex. 1993) ("[A] claimant may not recover mental anguish damages in connection with negligent misrepresentation." (citing *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442–43  (Tex. 1991)); *Wiley v. U.S. Bank, N.A.*, No. 3:11–CV–1241–B, 2012 WL 1945614, at *12 (N.D. Tex. May 30, 2012) ("Plaintiff attempts to circumvent the economic loss doctrine by alleging a variety of damages unrelated to the Note and Deed of Trust including attorneys' fees, lost time, emotional distress, and a lower credit rating.  Such allegations are not sufficient to avoid the economic loss doctrine in this case.").  The plaintiffs' arguments for rescission, which are based on the nonpecuniary nature of their injury, are not appropriate in the context of a negligent misrepresentation claim.  The cases cited do not support the rescission here.  *North Cypress Medical Center Operating Co., Ltd. v. St. Laurent*, 296 S.W.3d 171 (Tex. App. — [Houston 14th] 2009, no pet.), *Patrick v. Thomas*, No. 2–07–339–CV, 2008 WL 1932104 (Tex. App. — Fort Worth May 1, 2008, no pet.), and *Lavigne v. Holder*, 186 S.W.3d 625 (Tex. App. — Fort Worth 2006, no pet.), all generally concern the standards for granting temporary injunctive relief.  None of these cases discusses whether rescission is an available remedy when a negligent misrepresentation claim is alleged.

The negligent misrepresentation claims are also barred by the statute of frauds.  In *Sloane*, 825 S.W.2d 439, the Texas Supreme Court considered whether a bank's failure to offer a loan to prospective borrowers after incorrectly stating that their loan application had been approved subjected the bank to liability for making a false representation.  The court noted that the Texas statute of frauds requires many loan agreements to be in writing.  It held that the statute of frauds did not apply in the circumstances of that case because the prospective borrowers and the bank had not entered into a loan agreement.  The court stated, however, that when parties *have* entered into

an agreement, "a claim of negligent misrepresentation may not be used to circumvent the statute of frauds." *Id.* at 442.

Unlike the plaintiffs in *Sloane*, the plaintiffs here are parties to a loan agreement that is subject to the statute of frauds.   As explained above, a delay of repayment or financial accommodation — such as a promise to postpone a foreclosure sale — is required to be in writing under TEX. BUS. & COM. CODE § 26.02(a)(2).   The plaintiffs have not submitted or pointed to summary judgment evidence suggesting that Wells Fargo entered into a written agreement to suspend the February 1, 2011 foreclosure.   Their  negligent misrepresentation claims are an improper attempt to circumvent the statue of frauds.  *See Gamez v. Wells Fargo Bank, N.A.*, 2013 WL 960464, at *5 (S.D. Tex. 2013) (holding that the borrowers' negligent misrepresentation claims based on a lender's statement that foreclosure sale was cancelled were barred by the statute of frauds).

Summary judgment is granted on the negligent misrepresentation claims.

C.     **The Quiet Title Claims**

The plaintiffs ask this court for an order to quiet title to their home.  They allege that the MERS assignment of the Deed of Trust to Wells Fargo was invalid because "a legal and proper transfer of the underlying promissory note never took place."  (Docket Entry No. 11, ¶ 35).  The plaintiffs assert that "[t]here is no evidence that the promissory note was ever transferred/assigned properly from Franklin to Wells Fargo and subsequently to Freddie Mac."  (*Id.*).  They argue that "a deed of trust is the legal document that allows for the non-juidicial collection of the property when there is a breach of the underlying promissory note" but "does not secure rights in real property."  (*Id.*).

"A suit to clear title or quiet title — also known as a suit to remove cloud from title — relies on the invalidity of the defendant's claim to the property." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Hous. [1 Dist.] 2012), no pet. h). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Hous. [1 Dist. 2009, pet. denied). A suit to quiet title aims to "declare invalid or ineffective the defendant's claim to title." *Essex Crane*, 371 S.W.3d at 388 (citations omitted). The plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief. "The plaintiff must prove, as a matter of law, that he has a right of ownership and that the adverse claim is a cloud on the title that equity will remove." *Id.*

The defendants have attached to their summary-judgment motion the November 15, 2010 assignment of the note and deed of trust by MERS to Wells Fargo Bank. (Docket Entry No. 16, Ex. A-3). They argue that this assignment shows that they have a right to enforce the mortgage agreement. The plaintiffs have not responded to the defendants' request for summary judgment on their quiet title claims.

Summary judgment is warranted on the quiet title claims. Courts applying Texas law have uniformly held that "a transfer of an obligation secured by a note also transfers the note." *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 623 (N.D. Tex. 2011); *see also Bierwirth v. BAC Home Loans Servicing*, L.P., 2012 WL 3793190, at *4 (Tex. App.—Austin Aug.30, 2012) ("Although Bierwirth's note containing the express right to transfer did not identify MERS, Bierwirth's deed of trust did identify MERS, and because the note and deed of trust must be read together when evaluating their provisions, MERS had the authority to assign the note and

14

the deed of trust.").  The plaintiffs have not submitted or pointed to evidence creating a genuine fact dispute as to whether, as assignee, holder, and servicer of the Note and Deed of Trust, Wells Fargo had authority to accelerate the note and foreclose on their home.  Summary judgment is granted on the quiet-title claims.

### D.    The Claims Under the Texas Business and Commerce Code

The plaintiffs claim that the defendants violated §§ 3.301, 3.309, and 3.418(d) of the Texas Business and Commercial Code because the defendants were not holders or owners entitled to enforce the Note.  Section 3.301 provides, in relevant part, that a promissory note may be enforced by: "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3.309 or 3.418(d)."  Section 3.309 sets out when a person not in possession of an instrument, nonetheless, may be entitled to enforce it.  Section 3.418(d) relates to a situation in which an instrument has been paid or accepted by mistake.

The defendants argue that the Texas Business and Commerce Code lists the types of entities that may enforce an instrument but does not contain a private right of action.  The defendants also contend that Wells Fargo has shown that it was the assignee, holder, and servicer of the note and was entitled to enforce it under § 3.301.  The plaintiffs have not responded to the defendants' motion for summary judgment on the claims under the Texas Business and Commerce Code.

The defendants have provided competent summary-judgment evidence, in the form of the November 15, 2010 assignment by MERS to Wells Fargo, that Wells Fargo had the right to enforce the Note and Deed of Trust against the plaintiffs.  (Docket Entry No. 16, Ex. A-3).  The plaintiffs have not submitted or pointed to any evidence contesting the defendants' evidence  that Wells Fargo

was authorized under § 3.301 to foreclose on the home.  Summary judgment is granted on the

plaintiffs Texas Business and Commerce Code claims.

**IV.    Conclusion**

For the reasons stated above, the defendants' summary judgment motion is granted.  Final

judgment is entered by separate order.

SIGNED on March 30, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge